EMR/MEF:TBM/RSB
F. #2017R01960

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
* SEPTEMBER 30, 2025 *
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------X

UNITED STATES OF AMERICA

- against -

HOWARD RUBIN,
also known as "Howie"
and "H,"
JENNIFER POWERS and
STEPHEN POWERS,

Defendants.

----------------------------X

SUPERSEDING INDICTMENT

Cr. No. 25-281 (BMC) (S-1)
(T. 18, U.S.C., §§ 982(a)(2)(A), 982(b)(1), 1344, 1591(a)(1), 1591(a)(2), 1591(b)(1), 1594(d), 2421(a), 2428(a), 2 and 3551 et seq.; T. 21, U.S.C., § 853(p); T. 26, U.S.C., § 7206(1))

THE GRAND JURY CHARGES:

## INTRODUCTION

At all times relevant to this Superseding Indictment, unless otherwise indicated:

### I. The Defendants

1. The defendant HOWARD RUBIN, also known as "Howie" and "H," is a retired New-York based financier. From at least 2009 through 2019, RUBIN recruited dozens of women to engage in commercial sex acts with him involving bondage, discipline, dominance, submission and sadomasochism ("BDSM"). During many such encounters, RUBIN engaged in conduct beyond the scope of the women's consent.

2. From at least 2011 through 2019, the defendant JENNIFER POWERS facilitated RUBIN's commercial sexual encounters. Among other things, JENNIFER POWERS recruited women to have commercial sex with RUBIN, arranged travel and accommodations for women to fly to New York to engage in commercial sex acts with RUBIN, secured non-

disclosure agreements ("NDA") from women, procured BDSM toys and instruments for RUBIN to use during commercial sex acts with women, paid women after their sexual encounters in amounts directed by RUBIN, and managed the fallout from women's complaints stemming from the commercial sex acts with RUBIN.

3. The defendant STEPHEN POWERS has been married to the defendant JENNIFER POWERS since at least 2012.

II. The Sex Trafficking and Prostitution Operations

4. From approximately 2009 to 2019, the defendants HOWARD RUBIN and JENNIFER POWERS, together with others, operated a network whereby they recruited women, including Jane Does #1 through #10, individuals whose identities are known to the Grand Jury, to engage in commercial sex acts with RUBIN, in exchange for money, which acts involved BDSM. During many of these encounters, RUBIN brutalized women's bodies, causing them to fear for their safety and/or resulting in significant pain or injuries, which at times required women to seek medical attention. RUBIN and JENNIFER POWERS spent at least $1 million dollars of RUBIN's money operating and maintaining the trafficking network described herein.

5. Between 2009 to 2011, the commercial sex acts primarily occurred at luxury hotels in Manhattan, New York. Beginning in 2011, the defendant HOWARD RUBIN leased a luxury penthouse apartment located near Central Park, New York (the "Penthouse"). RUBIN and the defendant JENNIFER POWERS transformed one of the bedrooms in the Penthouse into a sex "dungeon" that was painted red and soundproofed; had a lock on the door; was furnished with BDSM equipment to which women could be strapped and restrained; and contained devices to shock or electrocute them, among other items. RUBIN also traveled out of state to engage in commercial sex acts with women, including to Las Vegas, Nevada.

6. The defendants HOWARD RUBIN and JENNIFER POWERS, together with others, recruited women—often targeting former Playboy models, whom they found through social media, modeling pages or high-end prostitution networks—to engage in commercial sex acts with RUBIN. RUBIN and JENNIFER POWERS, together with others, materially misrepresented to women the extent, manner and/or degree to which RUBIN would engage in physical and sexual violence. For example, in some instances, RUBIN provided a "safe word" the women could say to convey that they wanted the violent sexual conduct to cease, but then disregarded the safe word when women used it and continued the violent conduct without the women's consent. In other instances, regardless of whether RUBIN had provided a safe word, the women were unable to object to RUBIN's conduct because they were bound and/or gagged during the sexual encounter. In still other instances, women became unconscious during the sexual encounters, such that they were unable to consent.

7. The defendant HOWARD RUBIN paid different women for commercial sex multiple times a week, sometimes on consecutive days. The defendant JENNIFER POWERS frequently arranged the women's flights to New York, often to LaGuardia or John F. Kennedy Airports in Queens, New York, and transportation to the Penthouse; facilitated the women's entry with the Penthouse building doormen; and coordinated with the women to ensure that their visits to the Penthouse did not overlap. After the sexual encounters, RUBIN often described the encounters in detail to JENNIFER POWERS, who used the information to manage fallout with the women because of RUBIN's violence. Additionally, after the sexual encounters, RUBIN and/or JENNIFER POWERS used RUBIN's money to pay the women by wire transfer or a payment service such as PayPal or Venmo. At times, JENNIFER POWERS structured the payments to avoid sending a single transaction of $10,000 or more. If RUBIN

was satisfied with the way that the women had endured a sexual encounter, the women received $5,000 per encounter; if he was dissatisfied, he paid them several thousand dollars less.

8. The defendants HOWARD RUBIN and JENNIFER POWERS, together with others, required the women to sign NDAs, which, among other things, purported to require that the women assume the risk of the hazards and injury of the BDSM encounters with RUBIN, prohibit the disclosure of information about the BDSM sex with RUBIN, and require the payment of damages in the event of a breach. RUBIN and JENNIFER POWERS kept a safe in the Penthouse where they held a stock of blank NDAs. The women were not provided a copy of the NDA prior to being required to sign it. Moreover, at times, women were only presented the NDA after they had consumed alcohol and/or drugs with RUBIN and/or his co-conspirators.

9. After some of these encounters, women contacted the defendant JENNIFER POWERS and described what the defendant HOWARD RUBIN had done to them and/or sent images of their injuries. JENNIFER POWERS at times assuaged the women by, for example, telling them to ice their injuries or to apply bruise cream. Other times, JENNIFER POWERS minimized RUBIN's behavior by telling the women he was too drunk or even blaming the women for letting RUBIN get too drunk. On various occasions, victims notified RUBIN and JENNIFER POWERS that RUBIN had caused lasting pain and physical injuries to them, including, for example, a woman's breast implant that had flipped upside down and required surgery to fix, or pain, bruising and discoloration that lasted for weeks such that the women could not work.

10. The defendants HOWARD RUBIN and JENNIFER POWERS, together with others, employed coercive, fraudulent, threatening and deceptive tactics when they recruited, enticed, harbored, transported, provided, obtained, maintained, patronized and solicited

and paid the women to engage in commercial sex acts, including by minimizing the level and nature of the anticipated BDSM encounter. For example, RUBIN and JENNIFER POWERS, together with others:

(a) Employed a referral and recruitment system that failed to fully apprise women of what would occur during the commercial sexual encounters with RUBIN, including the manner and degree to which RUBIN would physically and sexually abuse them, and instead often mischaracterized the nature of the conduct, generally describing it as light fetish play or activity, or omitting that it would include sex acts with RUBIN;

(b) Obtained consent from women on the basis that they could use a safe word during the encounters, at which point RUBIN would cease engaging in the objectionable conduct, but then during the subsequent encounter, women were either physically unable to use the safe word, due to a gag, or when women used the safe word, RUBIN failed to cease the activity, including penetrating women with foreign objects, to which the women did not or no longer consented, even after they had asked RUBIN to stop;

(c) Encouraged women to become intoxicated with alcohol and drugs, such as sedatives, including by providing such substances before the sexual encounters, resulting in the women being unable to consent, including because of lack of consciousness; and

(d) Threatened women with legal consequences and public shaming if they sought legal recourse.

III. The Bank Fraud

11. In or about 2017, the defendants HOWARD RUBIN and JENNIFER POWERS, and others, were sued in the U.S. District Court for the Eastern District of New York by women who had engaged in commercial sex acts with RUBIN, requesting millions of dollars

in damages (the "Civil Case"). Throughout 2018, RUBIN was deposed in connection with the Civil Case, and he also attended the depositions of JENNIFER POWERS and all the plaintiffs who were deposed, among others. The Civil Case continued following RUBIN's deposition, and a jury trial commenced on or about March 23, 2022, and continued until on or about April 7, 2022. RUBIN testified in that jury trial on or about March 30, 2022.

12. In or about 2020, the defendants JENNIFER POWERS and STEPHEN POWERS relocated to Texas and purchased a home, secured by a mortgage (the "Mortgage") co-signed by the defendant HOWARD RUBIN, with a financial institution ("Financial Institution"), an entity the identity of which is known to the Grand Jury. On or about June 3, 2020, while RUBIN was in Suffolk County, New York, he emailed the Financial Institution a financial statement in support of his petition to co-sign the Mortgage. The financial statement was signed by RUBIN and dated on or about June 3, 2020. In response to the question, "Are you a party to any suit or are there any unsatisfied judgments against you?" RUBIN responded, "No," when in fact he was actively engaged in the Civil Case. The financial statement further provided that RUBIN would notify the Financial Institution in writing of any material unfavorable change, and that absent such notice, the Financial Institution could consider the financial statement "a continuing statement and substantially correct."

13. Thereafter, the Mortgage was restructured. On or about April 4, 2022, the defendant JENNIFER POWERS emailed the Financial Institution a renewed financial statement, signed by the defendant HOWARD RUBIN and dated on or about April 2, 2022. The financial statement did not include a correction by RUBIN stating that he was a party to a lawsuit, notwithstanding the fact that days earlier he had testified at the jury trial in the Civil Case.

IV. The Tax Fraud

14. The Internal Revenue Service ("IRS") was an agency of the United States Department of Treasury responsible for enforcing and administering the tax laws of the United States, and collecting taxes owed to the United States Department of the Treasury.

15. U.S. Individual Income Tax Return, Form 1040 ("Form 1040") was a tax return that a United States taxpayer could submit to the IRS on a yearly basis to report items, including income. Amended U.S. Individual Income Tax Return, Form 1040X ("Form 1040X") was an amended Form 1040 a taxpayer could submit to the IRS to correct a Form 1040.

16. From at least 2018 until 2023, the defendant HOWARD RUBIN funded virtually all aspects of the defendants JENNIFER POWERS and STEPHEN POWERS's lives, including paying for the following: the rent on their Manhattan apartment, private schooling for their children, their credit card bills, JENNIFER POWERS's legal fees associated with the trafficking operation described above, a down payment on their home in Texas and payments on the Mortgage, totaling more than $9,000,000.

17. Between September 2018 and September 2024, the defendants JENNIFER POWERS and STEPHEN POWERS filed joint Form 1040s and/or Form 1040Xs for each of the tax years 2018 through 2023, which they submitted to the IRS electronically through a tax preparer located in New Jersey. JENNIFER POWERS did not report any wages or income from employment. STEPHEN POWERS reported gross income from a disc jockey business he owned of less than $40,000 in the tax years 2018 and 2019 combined, and did not report any income from that business in each of the tax years 2020 through 2023. They did not report any of the funds from the defendant HOWARD RUBIN on their joint tax returns.

COUNT ONE
(Sex Trafficking – Jane Does #1 through #5)

18. The allegations contained in paragraphs one through 17 are realleged and incorporated as if fully set forth in this paragraph.

19. In or about and between 2015 and 2017, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants HOWARD RUBIN, also known as "Howie" and "H," and JENNIFER POWERS, together with others, did knowingly and intentionally recruit, entice, harbor, transport, provide, obtain, maintain, patronize and solicit, by any means one or more persons, to wit, Jane Does #1 through #5, in and affecting interstate commerce, and did benefit, financially and by receiving anything of value, from participation in a venture which engaged in such acts, knowing and in reckless disregard of the fact that means of force, threats of force, fraud and coercion, as described in Title 18, United States Code, Section 1591(e)(2), and a combination of such means, would be used to cause such persons to engage in one or more commercial sex acts, which offense was effected by means of force, threats of force, fraud and coercion, and a combination of such means.

(Title 18, United States Code, Sections 1591(a)(1), 1591(a)(2), 1591(b)(1), 2 and 3551 et seq.)

COUNT TWO
(Sex Trafficking – Jane Doe #6)

20. The allegations contained in paragraphs one through 17 are realleged and incorporated as if fully set forth in this paragraph.

21. In or about 2018, within the District of Nevada, the defendant HOWARD RUBIN, also known as "Howie" and "H," together with others, did knowingly and intentionally recruit, entice, harbor, transport, provide, obtain, maintain, patronize and solicit, by any means

one or more persons, to wit, Jane Doe #6, in and affecting interstate commerce, and did benefit, financially and by receiving anything of value, from participation in a venture which engaged in such acts, knowing and in reckless disregard of the fact that means of force, threats of force, fraud and coercion, as described in Title 18, United States Code, Section 1591(e)(2), and a combination of such means, would be used to cause such persons to engage in one or more commercial sex acts, which offense was effected by means of force, threats of force, fraud and coercion, and a combination of such means.

(Title 18, United States Code, Sections 1591(a)(1), 1591(a)(2), 1591(b)(1), 2 and 3551 et seq.)

COUNTS THREE THROUGH EIGHT
(Mann Act – Transportation)

22. The allegations contained in paragraphs one through 17 are realleged and incorporated as if fully set forth in this paragraph.

23. In or about and between 2009 and 2019, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants HOWARD RUBIN, also known as "Howie" and "H," and JENNIFER POWERS, together with others, did knowingly and intentionally transport individuals in interstate commerce with intent that such individuals engage in prostitution as described below:

| COUNT | INDIVIDUAL | APPROXIMATE DATE(S) |
|---|---|---|
| THREE | Jane Doe #1 | 2009 – 2017 |
| FOUR | Jane Doe #2 | 2015 |
| FIVE | Jane Doe #4 | 2016 |
| SIX | Jane Doe #7 | 2014 – 2019 |

| COUNT | INDIVIDUAL | APPROXIMATE DATE(S) |
|---|---|---|
| SEVEN | Jane Doe #8 | 2016 |
| EIGHT | Jane Doe #9 | 2016 |

(Title 18, United States Code, Sections 2421(a), 2 and 3551 et seq.)

COUNT NINE
(Mann Act – Transportation)

24. The allegations contained in paragraphs one through 17 are realleged and incorporated as if fully set forth in this paragraph.

25. In or about 2011, within the Eastern District of New York and elsewhere, the defendant HOWARD RUBIN, also known as "Howie" and "H," together with others, did knowingly and intentionally transport an individual, to wit: Jane Doe #10, in interstate commerce, with intent that such individual engage in prostitution.

(Title 18, United States Code, Sections 2421(a), 2 and 3551 et seq.)

COUNT TEN
(Bank Fraud)

26. The allegations contained in paragraphs one through 17 are realleged and incorporated as if fully set forth in this paragraph.

27. In or about and between June 2020 and April 2022, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant HOWARD RUBIN, together with others, did knowingly and intentionally execute a scheme to defraud the Financial Institution, and to obtain moneys, funds, credits and other property, owned by, and under the custody and control of, such financial institutions by means of materially false and fraudulent pretenses, representations and promises.

(Title 18, United States Code, Sections 1344, 2 and 3551 et seq.)

COUNTS ELEVEN THROUGH SIXTEEN
(False Tax Returns)

28. The allegations contained in paragraphs one through 17 are realleged and incorporated as if fully set forth in this paragraph.

29. On or about the dates set forth in the table below, within the District of New Jersey, the defendants JENNIFER POWERS and STEPHEN POWERS, together with others, willfully made and subscribed, and filed and caused to be filed with the IRS, false Forms 1040 and/or Forms 1040X, for the calendar years set forth below, which were verified by written declarations that they were made under the penalties of perjury, and which the defendants did not believe to be true and correct as to every material matter, in that the tax returns reported income that was substantially less than the income they received.

| COUNT | TAX YEAR | APPROXIMATE FILING DATE | FALSE ITEMS |
|---|---|---|---|
| ELEVEN | 2018 | September 2019 | a. Taxable income: $13,494<br>b. Total tax: $5,829 |
| TWELVE | 2019 | September 2020 | a. Taxable income: $6,272<br>b. Total tax: $650 |
| THIRTEEN | 2020 | September 2021 | a. Taxable income: $0<br>b. Total tax: $0 |
| FOURTEEN | 2021 | March 2024 | a. Taxable income: $248,769<br>b. Total tax: $43,958 |
| FIFTEEN | 2022 | October 2023 | a. Taxable income: $0<br>b. Total tax: $0 |
| SIXTEEN | 2023 | September 2024 | a. Taxable income: $93,981<br>b. Total tax: $5,079 |

(Title 26, United States Code, Section 7206(1); Title 18, United States Code, Sections 2 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION AS TO COUNTS ONE AND TWO

30. The United States hereby gives notice to the defendants charged in Counts One and Two that, upon their conviction of either of such offenses, the government will seek forfeiture in accordance with Title 18, United States Code, Section 1594(d), of: (a) any property, real or personal, that was involved in, used, or intended to be used to commit or to facilitate the commission of such offenses, and any property traceable to such property; and (b) any property, real or personal, constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such offenses, or any property traceable to such property.

31. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 1594(d); Title 21, United States Code, Section 853(p))

CRIMINAL FORFEITURE ALLEGATION
AS TO COUNTS THREE THROUGH NINE

32. The United States hereby gives notice to the defendants charged in Counts Three through Nine that, upon their conviction of such offenses, the government will seek forfeiture in accordance with Title 18, United States Code, Section 2428(a), which requires the forfeiture of: (a) any property, real or personal, that was used or intended to be used to commit or to facilitate the commission of such offenses; and (b) any property, real or personal, constituting or derived from proceeds obtained directly or indirectly as a result of such offenses.

33. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 2428(a); Title 21, United States Code, Section 853(p))

CRIMINAL FORFEITURE ALLEGATION
AS TO COUNT TEN

34. The United States hereby gives notice to the defendant charged in Count Ten that, upon his conviction of such offense, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(2)(A), which requires any person convicted of such offense to forfeit any property constituting, or derived from, proceeds obtained directly or indirectly as a result of such offense.

35. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other

property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(2)(A) and 982(b)(1); Title 21, United States Code, Section 853(p))

A TRUE BILL

/s/

FOREPERSON

By David Pitluck, Assistant U.S. Attorney

JOSEPH NOCELLA, JR.
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK